# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| DONNA JO ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 15-1114-JAR |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff Donna Jo Rogers' application for a period of disability and disability insurance benefits under Title II of the Social Security Act.[1] Because the Court finds that Defendant Commissioner's findings are not supported by substantial evidence, the Court reverses and remands this matter to Defendant.

## I.     Procedural History

On November 16, 2011, Plaintiff protectively applied for a period of disability and disability insurance benefits, as well as for supplemental security income, alleging an onset date of April 1, 2008, and later an amended onset date of October 6, 2011. Plaintiff was last insured for disability insurance benefits on June 30, 2013. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff timely requested a hearing before an administrative law judge ("ALJ"). After a hearing, the ALJ issued a decision finding that Plaintiff was not disabled; the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Plaintiff then

---

[1] 42 U.S.C. §§ 401–434.

timely sought judicial review before this Court.

## II. Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[2] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[4]

## III. Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[5] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[6] The Secretary has established a five-step sequential evaluation process to determine whether a claimant is

---

[2]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[3]*Id.* (quoting *Castellano*, 26 F.3d at 1028).

[4]*Id.*

[5]42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[6]*Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

disabled.[7]  If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[8]

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not engaged in substantial gainful activity[9] since October 6, 2011, the alleged onset date, as amended.  Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe" impairments: arthralgias, a benign left thyroid mass, major depressive disorder, panic disorder and an anxiety disorder.  Nor does Plaintiff challenge the ALJ's determination at step three that she does not have an impairment or combination of impairments that meet or equal a listing.

But Plaintiff challenges the ALJ's determination of Plaintiff's Residual Functional Capacity ("RFC"), which Plaintiff argues is the product of the ALJ: (1) failing to properly analyze and weigh the medical opinion of her treating nurse practitioner, F.C. McCullough, ARNP; (2) failing to discuss and accord weight to the opinions of any other medical opinions of record, to wit: the opinions of Drs. Altomari, Reed and Geis; (3) failing to fully develop the record by failing to obtain opinions from two other treatment providers, St. Vincent Clinic and the Guidance Center; (4) failing to obtain a consultative examination to assess the effects of Plaintiff's impairments on her functioning; (5) failing to re-contact consultative examiner Dr. Hughey to clarify his findings or provide an RFC assessment; (6) failing to assess the impact of Plaintiff's obesity on her functioning; and (7) failing to properly evaluate Plaintiff's credibility.

---

[7]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

[8]*Id.*

[9]*See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

3

Plaintiff further challenges the ALJ's determination at step 5 as being the product of an incomplete hypothetical based on an erroneous RFC, and further that the ALJ failed to address whether the jobs identified by the Vocational Expert ("VE") constituted a significant number of jobs available to Plaintiff.

**IV.     Discussion**

The ALJ found that Plaintiff has the RFC to:

> lift and/or carry up to 10 pounds, stand and/or walk 2 of 8 hours and sit 6 of 8 hours. She has an unlimited ability to push and/or pull with her extremities. She can do no climbing of ladders, ropes, or scaffolds. She can occasionally climb stairs, balance, stoop, kneel, crouch or crawl. She needs limited contact with co-workers, supervisors and the general public due to the loss of concentration, persistence and pace as well as anxiety disorder. And, due to her physical limitations, she will need to have a sit/stand option, but such limitation would not otherwise materially affect her ability to work.

**A.     Consideration of medical opinions**

In this case, no treating physicians rendered an opinion, but another medical source, F.C. McCullough, ARNP, rendered an opinion, which the ALJ expressly gave no weight. Plaintiff claims that the ALJ erred in according no weight to ARNP McCullough's opinion and further erred in not soliciting opinions from an acceptable medical source at the Guidance Center, where McCullough practiced, and from an acceptable medical source at St. Vincent Clinic where Plaintiff also received treatment.

With respect to Plaintiff's physical impairments, Defendant obtained a consultative examination from Dr. Jay Hughey, D.O, which the ALJ referenced and discussed. Although Dr. Hughey did not render an RFC assessment, he reported that the examination revealed that Plaintiff's "[g]ait limps to the left," and after examining Plaintiff, he found that although Plaintiff

4

did not use an assistive device and had only mild difficulty getting on and off the examination table, she had moderate difficulty with heel and toe walking and severe difficulty with hopping, squatting and arising from the sitting position. Dr. Hughey further found, that the effect of Plaintiff's arthralgias included "limited range of motion in the flexion plane of both knees" and "difficulty with orthopedic manuevers." The ALJ did not address what weight he gave these findings.

Defendant also had Dr. Dick Geis review Plaintiff's records, but the ALJ failed to mention Dr. Geis and failed to accord any weight to his opinion. Although much of Dr. Geis's RFC opinion is consistent with the ALJ's determination of RFC, Dr. Geis opined that Plaintiff must avoid concentrated exposure to extreme heat, humidity, vibrations or hazards such as machinery or heights. The ALJ did not adopt these limitations, and given the ALJ's silence on Dr. Geis's opinion, it is impossible to know whether the ALJ considered this opinion and/or why he rejected it.

With respect to Plaintiff's mental impairments, Defendant had two consultants review the records, psychologist, Mark Altomari, Ph.D, and psychiatrist, Dr. Robin Reed. Again, the ALJ failed to mention, much less accord weight to these opinions. The ALJ apparently agreed with Dr. Reed's opinion that Plaintiff should have limited contact with co-workers, supervisors and the general public due to the loss of concentration, persistence and pace, as well as anxiety disorder. But, part of the Dr. Altomari's opinion was not adopted, that Plaintiff has moderate limitations in the ability to understand, carry out or remember detailed instructions. The ALJ's failure to accord weight to Dr. Altomari's opinion and the concomitant failure to explain why he rejected this critical part of Dr. Altomari's opinion is error. The Court simply cannot review the

did not use an assistive device and had only mild difficulty getting on and off the examination table, she had moderate difficulty with heel and toe walking and severe difficulty with hopping, squatting and arising from the sitting position. Dr. Hughey further found, that the effect of Plaintiff's arthralgias included "limited range of motion in the flexion plane of both knees" and "difficulty with orthopedic manuevers." The ALJ did not address what weight he gave these findings.

Defendant also had Dr. Dick Geis review Plaintiff's records, but the ALJ failed to mention Dr. Geis and failed to accord any weight to his opinion. Although much of Dr. Geis's RFC opinion is consistent with the ALJ's determination of RFC, Dr. Geis opined that Plaintiff must avoid concentrated exposure to extreme heat, humidity, vibrations or hazards such as machinery or heights. The ALJ did not adopt these limitations, and given the ALJ's silence on Dr. Geis's opinion, it is impossible to know whether the ALJ considered this opinion and/or why he rejected it.

With respect to Plaintiff's mental impairments, Defendant had two consultants review the records, psychologist, Mark Altomari, Ph.D, and psychiatrist, Dr. Robin Reed. Again, the ALJ failed to mention, much less accord weight to these opinions. The ALJ apparently agreed with Dr. Reed's opinion that Plaintiff should have limited contact with co-workers, supervisors and the general public due to the loss of concentration, persistence and pace, as well as anxiety disorder. But, part of the Dr. Altomari's opinion was not adopted, that Plaintiff has moderate limitations in the ability to understand, carry out or remember detailed instructions. The ALJ's failure to accord weight to Dr. Altomari's opinion and the concomitant failure to explain why he rejected this critical part of Dr. Altomari's opinion is error. The Court simply cannot review the

ALJ's determination of RFC with this silence in the record.

Defendant argues that this limitation in the ability to understand, carry out or remember detailed instructions was captured by the ALJ's determination that Plaintiff can only do unskilled work with only limited contact with others, and recognized the consultants' opinions that Plaintiff could carry out very short and simple instructions. First, the ALJ's RFC did not include any reference to unskilled work. And, though the VE determined that Plaintiff could perform three types of jobs that are classified as unskilled, the ALJ did not pose a hypothetical to the VE that incorporated a reference to unskilled work. In any event, a limitation to simple work or unskilled is generally insufficient to address a claimant's mental impairments, for mental functions are not skills, but are prerequisites for work at any skill level.[10] In fact, SSR 96-8p requires that "nonexertional capacity [which includes mental limitations] must be expressed in terms of work-related functions" or "[w]ork related mental activities."[11]

The ALJ did consider and expressly accorded no weight to ARNP McCullough, a nurse practitioner at the Guidance Center who though is a treating medical provider, is not an acceptable medical source under the regulations.[12] Here, the ALJ did not reject McCullough's opinion simply because she is an non-acceptable medical source. Rather, the ALJ discredited her opinion as being unsupported by, and inconsistent with the evidence, including McCullough's own treatment progress notes. With respect to a non-acceptable medical source's

---

[10] *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012).

[11] SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).

[12] *See* 20 C.F.R. § 404.1502 (defining acceptable medical source as one of the sources described in §404.1513(a), which in turn defines acceptable medical sources as licensed physicians, licensed or certified psychologists, licensed optometrists and podiatrists, and qualified speech-language pathologists).

opinion, the ALJ's decision is sufficient if it permits the court "follow the adjudicator's reasoning."[13] The Court can follow the ALJ's reasoning in rejecting McCullough's opinion, and thus concludes that the ALJ did not err.

Nonetheless, by failing to discuss and expressly accord weight to the opinions of Drs. Hughey, Geis, Altomari and Reed, the ALJ erred. For "[a]n ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional."[14] A treating source provider's opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence in the record; but if it is "deficient in either respect, it is not entitled to controlling weight."[15] Even if the opinion of a treating provider is not worthy of controlling weight, it must still be accorded deference and must still be evaluated in light of the factors set forth in the relevant regulations.[16] Of course here, there was no opinion from an acceptable medical source who treated Plaintiff; there were opinions from a physician who examined Plaintiff, as well as opinions from physicians and a psychologist who reviewed Plaintiff's medical records. But, if the ALJ intends to rely upon a nontreating physician or examiner's opinion, he must explain the weight he gives to that opinion.[17]

---

[13] *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (citing SSR 06-3p, 2006 WL 2329939, at *6 (August 9, 2002)).

[14] *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)(citing 20 C.F.R. § 404.1527(d)).

[15] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96- 2p, 1996 WL 374184, at *5 (July 2, 1996)).

[16] *Hamlin v. Barnhart*, 365 F.3d at 1215.

[17] *Id*. (citing 20 C.F.R. § 416.927(f)(2)).

Although Plaintiff argues that the ALJ failed to adequately develop the record, by failing to obtain opinions from acceptable medical sources at the Guidance Center and at St. Vincent Clinic, the Court finds no error. In *Madrid v. Barnhart*,[18] the Tenth Circuit explained that although it is the claimant's duty to prove the alleged disability, given the non-adversarial nature of the administrative proceeding, the ALJ is required to ensure that an adequate record is developed, including obtaining pertinent, available medical records, which come to the ALJ's attention during the course of the hearing.[19] Plaintiff points to no authority that the ALJ is required to obtain an opinion from a treating source. Indeed, the ALJ did consider the records from the treating sources, which the ALJ referenced in his opinion, without any indication that the records were themselves inadequate.

Nor does Plaintiff point to any authority supporting her claim that the ALJ erred in not re-contacting Dr. Hughey for clarification of his findings or to demand that Dr. Hughey do an RFC assessment. Indeed, Defendant has considerable discretion in deciding whether to even obtain a consultative examination.[20] And, even if the ALJ rejected Dr. Hughey's findings, that did not trigger a duty for the ALJ to re-contact that Dr. Hughey.[21] In short, the ALJ's duty is limited to "fully and fairly develop[ing] the record as to material issues."[22] The error was not the ALJ's failure to demand an RFC assessment of Dr. Hughey, nor the ALJ's failure to demand opinions from treating sources. The error was in the ALJ's failure to accord and explain the

---

[18] 447 F.3d 788, 790 (10th Cir.2006) (citations omitted).

[19] *Id.*

[20] *Id.*

[21] *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001).

[22] *Madrid v. Barnhart*, 447 F.3d at 790.

weight given to the various medical opinions rendered in this matter.

  **B.**  **Obesity determination**

  The record evidences that Plaintiff is obese. In June 2012, an emergency room physician, Dr. Matthew Leight, described Plaintiff as "super morbidly obese," and Dr. Hughey, who did a consultative examination of Plaintiff on August 25, 2012, noted that she was markedly overweight. At the time of the ALJ hearing on August 12, 2013, Plaintiff carried 244 pounds on her 5'4" frame. But, the ALJ failed to mention Plaintiff's obesity, much less discuss the effects of her obesity on her functioning. This is error, for SSR 02–1p requires an ALJ to consider the effects of obesity when assessing RFC, including the fact that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."[23] To be sure, the ALJ assessed Plaintiff's RFC as limiting her to sedentary jobs, with limitations on sitting, standing, walking and other exertional limitations that were no less restrictive than the opinions offered by any of the medical sources in this case. But on remand, the ALJ should expressly address Plaintiff's obesity and the effect, if any it has on her severity and functional effects of her obesity, combined with her other impairments.

  **C.**  **Credibility Determination**

  Plaintiff also challenges the ALJ's credibility determination as not supported by substantial evidence. "Credibility determinations are peculiarly the province of the finder of fact" and will stand when supported by substantial evidence,[24] such that courts usually defer to

---

[23]*DeWitt v. Astrue*, 381 F. App'x 782, 785 (10th Cir. 2010); SSR 02-1P, 2002 WL 34686281 (September 12, 2002).

[24]*Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010).

the ALJ on matters involving credibility.[25]

The ALJ acknowledged that he must perform a two-step evaluation, first determining whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's symptoms; and then, taking into the consideration the entire case record, evaluating the intensity, persistence, and functionally limiting effects of the symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities.[26] Here, the ALJ found that the objective medical evidence did not support Plaintiff's claims as to the intensity, persistence or limiting effects of her physical or her mental impairments.

With respect to her mental impairments, the ALJ found that the longitudinal treatment record showed only mild disturbances of mood, sleep, energy and activity, and that regularly assessed GAF scores were in the range 52–65, indicating moderate to mild symptoms. The ALJ further found that Plaintiff has better control of her mental health symptoms with treatment and medication compliance, referencing Plaintiff's statement to a treatment provider in the initial psychiatric assessment in February 2013, that she wakes up anxious, but after taking her morning dose of medication, she is fine. Yet, this same treatment note also indicates that Plaintiff was experiencing increased anxiety. And, as Plaintiff posits, the treatment records also show that during the course of several years of treatment, Plaintiff at times experienced increased anxiety and depressive symptoms despite treatment and despite her a medication regimen that included multiple medications. Her prescription for Xanax, in particular, was steadily increased to

---

[25]*Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994).

[26]*Jones v. Astrue,* 500 F. Supp. 2d 1277, 1288–89 (D. Kan. 2007).

address her anxiety, until it was prescribed at the maximum dosage, and the prescribing doctor necessarily switched to another medication, Buspar. Upon remand, the ALJ should consider the entirety of the treatment record, which is objective medical evidence that must be considered.

With respect to her physical impairments, the ALJ found that although x-rays revealed that Plaintiff had degenerative changes in her lumbar spine and moderate degenerative joint disease in both knees, and that Dr. Hughey's consultative examination revealed that Plaintiff had reduced range of motion in both knees, lumbar spine and difficulty with orthopedic manuevers, Dr. Hughey found no asymmetrical reflex, sensory or motor deficits. It appears that the ALJ did consider the entirety of the objective medical evidence concerning Plaintiff's physical impairments.

Since the ALJ found that Plaintiff's statements about the intensity, persistence or functionally limiting effects of her physical as well as mental symptoms were not substantiated by objective medical evidence, it was incumbent upon him to make a finding on the credibility of Plaintiff's statements, based on consideration of the entire case record.[27]

In evaluating a claimant's credibility of her subjective symptoms, the Tenth Circuit counsels that the ALJ should consider a nonexhaustive list of factors:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical

---

[27]*Id*. (citing SSR 96-7p, 1996 WL 374186 (July 2, 1996)).

evidence.[28]

Here, the ALJ considered Plaintiff's reports of activities of daily living in discrediting her testimony about her physical and mental impairments. The ALJ found that Plaintiff had been able to engage in a variety of daily activities surrounding caring for her grandson, whom she had been caring for since he was three years old. Plaintiff argues that the ALJ improperly failed to consider that the third party reports and her own report indicated that she engages in child care and household duties on a limited basis only, requiring the assistance of her husband and daughter. But, the ALJ considered these reports, as well, and found them inconsistent with Plaintiff's reports about the nature and extent of her activities of daily living.

Plaintiff's daughter reported that she spends about five hours a day with her mother, assisting her with errands, helping her take care of Plaintiff's grandson and Plaintiff's disabled son, taking Plaintiff to doctor appointments, and helping her cook, clean, and do laundry. Her daughter reported that when she drives Plaintiff to conduct errands, Plaintiff stays in the car. But Plaintiff's daughter inconsistently reported that Plaintiff is able to shop in stores. Plaintiff's daughter also reported that Plaintiff has difficulty following written or spoken instructions.

Plaintiff similarly reported that her husband and daughter help her with virtually all household activities. But her husband's third party report contradicted the reports of Plaintiff and their daughter. Plaintiff's husband reported that Plaintiff cooks, cleans, shops, does laundry, housework, and cares for their disabled son and grandson, without help from anyone. Based on Plaintiff's husband's report, the ALJ's finding that the third party reports are inconsistent with Plaintiff's report of activities of daily living. The reports are inconsistent, and the ALJ's

---

[28]*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citing *Thompson v. Sullivan*, 987 F.2d 1482, (10th Cir. 1993)).

12

conclusion that Plaintiff could engage in a variety of daily activities despite her subjective limitations finds support in the evidence.

In discrediting Plaintiff, the ALJ also explained that she had a history of low wages prior to her amended alleged onset date, and had never worked at "the substantial gainful activity level." This, too, was a proper factor to consider in discrediting Plaintiff.[29]

D.     **Vocational Expert testimony**

Plaintiff also claims the ALJ erred at step 5 in two ways. First, the hypothetical question posed to the VE did not include all of the functional limitations supported by the substantial evidence. The Court need not address this point of error, as Defendant will be revisiting the issue of the extent of Plaintiff's functional limitations upon remand.

But Plaintiff also argues that the ALJ erred in failing to address whether the jobs identified by the VE constitute a significant number of jobs available to Plaintiff. Plaintiff points to the VE's testimony about the number of jobs available in Kansas for the three positions the VE testified that Plaintiff can perform. The VE testified that in Kansas, there are 140 final assembler jobs, 200 document preparer jobs, and 475 pharmaceutical processor jobs. But the number of jobs statewide is not the standard at step 5; rather, the standard is whether there are jobs that exist in significant numbers in the *national* economy.[30] And, work exists in the national economy when it exists in significant numbers either in the region where the claimant lives, or in several other regions, regardless of whether work exists in the immediate area where the

---

[29]*Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir.1995).

[30]20 C.F.R. § 404.1566(b).

claimant resides.[31] Here, the VE testified that nationally there were: 12,000 final assembler jobs; 30,000 document preparer jobs; and 27,350 pharmaceutical processor jobs. The ALJ did not err in determining these particular jobs existed in significant numbers in the national economy. Of course, upon remand, and reconsideration of the medical opinions as well as the effect of Plaintiff's obesity, Defendant may find that Plaintiff is disabled at a prior step, or may engage in a different step 5 analysis based on the Defendant's findings in the prior steps.

V.      **Conclusion**

For the above explained reasons, the Court concludes that the ALJ erred in his consideration of the medical opinions and in his failure to consider Plaintiff's obesity and its effects if any on the severity of her impairments and/or her functional limitations.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **REVERSED AND REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.**

**IT IS SO ORDERED.**

Dated: February 8, 2016

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[31]*Id.*